IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIRGINIA PENNINGTON, Individually    )
and on behalf of all others similarly situated,    )
    )
      Plaintiff,    )
    )
v.    )
    )    Civil Action No. _____
TRAVELEX CURRENCY SERVICES,    )
INC. , WEST SUBURBAN BANK, AND    )
WEST SUBURBAN BANCORP, INC.,    )
    )
      Defendants.    )
    )

## COMPLAINT

Plaintiff, Virginia Pennington ("Pennington" or "Plaintiff"), on behalf of herself and other similarly situated individuals ("the Class"), brings this Complaint against Defendants Travelex Currency Services, Inc. ("Travelex"), West Suburban Bank, and West Suburban Bancorp, Inc. and alleges as follows:

## I. SUMMARY OF CASE

**1.** Travelex is in the business of currency exchange. In 2008, Travelex introduced a prepaid foreign currency card entitled "Cash Passport." Plaintiff and the proposed Class were promised "excellent exchange rates" and free "Load" and "Cash Out" fees when using the Cash Passport. In fact, Travelex and West Suburban Bank charged excessive exchange rates and collected undisclosed fees on the transactions. Plaintiff therefore seeks to recover the excessive exchange rate and the hidden fees paid by all persons who paid Travelex money to "Load" or "Cash Out" the Cash Passport.

## II.  PARTIES

**2.**     **Plaintiff.**  Plaintiff Virginia Pennington is a citizen of the State of Texas and resides in Dallas County, Texas.

**3.**     **Travelex.**  Defendant Travelex Currency Services, Inc. is a Delaware corporation with a registered office at CT Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**4.**     **West Suburban Bank and Bancorp.**  Defendant West Suburban Bank is an Illinois-chartered bank; West Suburban Bancorp, Inc. is an Illinois corporation that is a bank holding company and the parent and sole shareholder of West Suburban Bank.  Both entities share a principal place of business at 711 South Meyers Road, Lombard, Illinois 60148.  All references below to West Suburban Bank refer collectively to West Suburban Bancorp, Inc. and West Suburban Bank.

## III.  JURISDICTION AND VENUE

**5.**     **Jurisdiction.**  This Court has personal jurisdiction because Travelex and West Suburban Bank do substantial business in this district and division.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

**6.**     **Venue.**  Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because both Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.  FACTS COMMON TO ALL COUNTS

**7.**     **The "Chip and PIN" Cash Passport.**  In March 2008, Travelex introduced the "Travelex Chip and PIN Cash Passport," which is a prepaid travel card in conjunction with MasterCard and West Suburban Bank.  "Cash Passport" refers exclusively to this card.  This case

does not relate to the prepaid travel card that was not "Chip and PIN" enabled, issued through MetaBank, that was also called a "Cash Passport." The difference is important because the Cash Passport at issue was represented as having "Free" fees in all relevant respects.

8.      **The Cash Passport Terms and Conditions.** The Cash Passport was subject to the terms and conditions for the Cash Passport issued through West Suburban Bank. The terms and conditions applicable to the Cash Passport state that the laws of the State of Illinois govern the agreement. Attached as Exhibit "A" is the Cash Passport Terms and Conditions.

9.      **The "Free" Fees and Limits.** Travelex represented that the "Cash Passport is low cost, allowing our customers to use more of their valuable funds during their travels," specifically stating the following services had no associated fees and were provided free of charge:

| Fee | Cost |
| --- | --- |
| Card Load | Free |
| Point of Sale Transaction | Free |
| Additional Card | Free |
| Balance Inquiry Fee | Free |
| Travelex ATM Withdrawal | Free |
| In Store Cash Out | Free |

[Exh. B.]

10.     **The Actual Fees Charged by Travelex.** In reality, Travelex obtains profit, fees, and commissions (including "Load" and "Cash Out" fees) for the Cash Passport by employing an excessive and unfair exchange rate that is not disclosed at the time of purchase. When Loading the Cash Passport, Travelex excessively marks up the interbank exchange rate, well above the rate that could be obtained by going to a bank and purchasing Euros or British pounds. Moreover, the Cash Out fees are excessive and unfair. A Class Member has no choice but to

incur Cash Out fees, however, because Travelex also imposed inactivity fees on the Cash Passport. Moreover, on or about April 30, 2013, West Suburban Bank discontinued the Cash Passport, requiring persons to Cash Out, and thereby incur excessive fees.

11. **Plaintiff Pennington's Experience With the Cash Passport.** On or about June 21, 2011, Pennington purchased a Cash Passport at a shopping mall kiosk. Pennington was informed by Travelex that the Cash Passport offered an "excellent exchange rate" and "zero percent commission" for both Card Load and In Store Cash Out. Specifically, Pennington inquired whether there were any costs or fees before she purchased the Cash Passport, and she was told "no, it is free." Pennington was ready, willing, and able to obtain Euros at a bank, but did not do so in reliance upon the foregoing representations. Pennington loaded the Cash Passport with Euros and paid $500.00 in U.S. currency. On or about September 22, 2011, after her daughter (for whom the card was purchased) returned from a trip to Europe, Pennington Cashed Out her Cash Passport, receiving $123.40 in U.S. currency. The costs Pennington incurred in loading and cashing out the card were $77.18, based upon the actual exchange rates between dollars and Euros available through commercial banks at the time. This amounted to over 15% in total fees, well in excess of any "excellent" exchange rate and not free Load or Cash Out fees.

## V. CLASS ACTION ALLEGATIONS

12. **Class Definition.** Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of the following class (the "Class"): all persons who purchased Travelex Cash Passport cards with United States currency and which were converted to British pounds or Euros and all persons Cashing Out Travelex Cash Passport cards loaded with British pounds or Euros and who received United States currency.

13.     **Class Certification.**  This action may be maintained as a class action pursuant to Rule 23, F.R.C.P. because it satisfies the following criteria:

    **a.**     The Class is so numerous that joinder of all members is impracticable;

    **b.**     There are questions of law and fact common to the Class;

    **c.**     The claims or defenses of the representative parties are typical of the claims or defenses of the Class; and

    **d.**     The Class Representative will fairly and adequately protect the interests of the Class.

14.     **Predominance and Superiority.**  The Class is properly certifiable pursuant to Rule 23(b)(3) because the questions of law and fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Among other things, each Class Member's interest in individually controlling the prosecution of the claims herein makes it virtually impossible to assert those claims outside the class action context.  Moreover, there is no other litigation known by the undersigned counsel that asserts claims based on the facts in this controversy.  Bringing litigation in this forum is appropriate because it is the location of West Suburban Bank's principal office and because Defendants have selected Illinois law to govern any disputes related to the Travelex Cash Passport Card.  Finally, there are no likely difficulties in managing this case as a class action and the Plaintiff's counsel is experienced in class actions.

15.     **Common Questions.**  The common questions of law and fact include, *inter alia,* the following:

    **a.**     Travelex and West Suburban Bank's representations about the

Cash Passport through the uniform agreements and web pages regarding the fees and favorable exchange rate;

**b.** The construction of the agreement between Defendants and the Class members;

**c.** Whether the representation that the exchange rate was "excellent" or the Cash Passport "low cost" was deceptive;

**d.** Whether the representation that the "Card Load" had no fee was deceptive;

**e.** Whether the representation that there was no fee for "In Store Cash Out" was deceptive;

**f.** How Defendants calculated the exchange rate;

**g.** Whether Defendants disguised profit, fees, commissions, or other charges within the exchange rate;

**h.** Whether Class members were forced to incur fees and paid excessive exchange rates by virtue of West Suburban Bank discontinuing the Cash Passport;

**i.** Whether the exchange rates imposed by Defendants were unconscionable;

**j.** Whether Defendants' representations regarding the fees and exchange rates associated with the Cash Passport violate the Illinois Consumer Fraud Act; and

**k.** The method and calculation of damages for members of the Class.

## VI.  **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

**16.**     Plaintiff repeats and re-alleges each of the preceding paragraphs as if set forth fully herein.

**17.**     Defendants entered into identical contracts with Plaintiff and all Class members that set forth the free Load and Cash Out fees for the Cash Passport and a "low cost" way to have foreign currency.  Plaintiff and the Class therefore entered into uniform and unambiguous contracts with Defendants to pay only a low exchange rate and incur no fees, including without limitation Load Fees and Cash Out Fees for the Cash Passport.

**18.**     Defendants breached their contract with Plaintiff and the Class, and their covenant of good faith and fair dealing, by charging fees, commissions, and profits in contravention of the Agreement through a disguised and excessive exchange rate, both when purchasing and loading the card, and when cashing out.  Moreover, Class members were forced to incur Cash Out fees when West Suburban Bank discontinued the Cash Passport program.  The excessive exchange rate and hidden fees were also a breach of Defendants' duty of good faith and fair dealing.

**19.**     Defendants' disclosures were insufficient and did not establish consent because Defendants stated that the Cash Passport was low cost and did not explain that the exchange included fees, commissions, and profits and that the exchange rate was materially higher than the rate charged by banks.

**20.**     In addition, the contract between the Class and Defendants is one of adhesion that must be construed against the drafter and in favor of Plaintiff and the Class.

**21.**     As a direct and proximate result of Defendants' breach of contract, Plaintiff and the Class have been damaged in an amount easily calculated by comparing the difference between the exchange charged by Defendants and the interbank exchange rate in effect on the

date of each purchase, Load, or Cash Out transaction. These damages are readily calculable from data maintained by Defendants for the Cash Passport program.

## VII.  SECOND CAUSE OF ACTION –
## VIOLATION OF THE ILLINOIS CONSUMER
## FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

**22.**      Plaintiff repeats and re-alleges each of the preceding paragraphs as if set forth fully herein.

**23.**      At all relevant times, Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/2 (the "Consumer Fraud Act"), provided in part:

> "§2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

**24.**      The Defendants' have engaged in unfair and deceptive practices which are unlawful because they affirmatively misrepresented that the Cash Passport was "low cost," the exchange rate "excellent," and that the Load and Cash Out fees for the Cash Passport were free, when in fact Cash Passport was expensive, had an excessive exchange rate, and Defendants charge fees through disguised and excessive exchange rates.

**25.**      Defendants also failed to inform Plaintiff and the Class that the exchange rate was materially higher than the exchange rate available at banks and exchanges because it included hidden and disguised fees, commissions, profits, and other charges. Plaintiff and the Class suffered actual damages in the amount of the excessive exchange rates, for which they now sue.

## VIII.  THIRD CAUSE OF ACTION –
## UNJUST ENRICHMENT/COMMON LAW RESTITUTION

**26.**     Plaintiff repeats and re-alleges each of the preceding paragraphs, as if set forth fully herein.

**27.**     By imposing an excessive and unfair exchange rate that was materially higher than exchange rates that were widely available from other institutions, while simultaneously claiming that Load Fees and Cash Out Fees for the Cash Passport were free, Defendants collected fees in excess of those to which it was contractually entitled.  Defendants have therefore unlawfully and unjustly enriched themselves at the cost of the Plaintiff and the Class. Plaintiff and the Class therefore seek an order of restitution and disgorgement of all excessive fees collected by Defendants.

## IX.  FOURTH CAUSE OF ACTION – FRAUD

**28.**     Plaintiff repeats and re-alleges each of the preceding paragraphs, as if set forth fully herein.

**29.**     Defendants knowingly misrepresented that there were no Load Fees and Cash Out Fees, when in fact these fees were built into the excessive exchange rate.  Defendants furthermore misrepresented that the exchange rate was "excellent," and the Cash Passport "low cost" when it was in fact a very expensive way to obtain foreign currency because it included fees, commissions, profits, or other charges that were either undisclosed or affirmatively misrepresented to be "free."

**30.**     Defendants made these misrepresentations and omissions with the intent that Plaintiff and the Class rely, and Plaintiff and the Class reasonably relied to their detriment in purchasing the Cash Passport.  Plaintiff and the Class therefore seek all damages proximately caused by Defendants in Loading and Cashing Out the Cash Passport.

**Jury Demand.**  Plaintiff and the Class demand a trial by jury.

## X.  **PRAYER FOR RELIEF**

31.     Plaintiff, on behalf of herself and on behalf of the Class, requests the following relief:

a.      An order certifying the Class and appointing Plaintiff as representative of the Class and the undersigned counsel as Class Counsel;

b.      Imposition of a constructive trust upon all excessive funds Defendants have acquired as a result of the excessive exchange rate and undisclosed fees, profits, and other charges;

c.      Actual damages suffered by Plaintiff and the Class and full restitution of all excessive exchange rate charges acquired via Defendants' breach of contract and other unlawful practices, including disgorgement of all undisclosed fees, profits, commissions, and other charges;

d.      Punitive or exemplary damages, in an amount determined by the Court and/or jury;

e.      Any and all statutory enhanced damages;

f.      All reasonable and necessary attorneys' fees provided by statute or common law;

g.      Pre- and post-judgment interest; and

h.      Any other and further relief, general and special, legal and equitable, to which Plaintiff and the Class may be justly entitled.

Respectfully submitted,

By:  /s/ Terrence Buehler
        Terrence Buehler
        Illinois State Bar No.6181738
        TOUHY, TOUHY & BUEHLER, LLP
        55 W. Wacker Drive, ste 1400
        Chicago, IL 60601
        (312) 372-2209
        tbuehler@touhylaw.com

        Keith R. Verges
        Texas State Bar No. 20547650
        FIGARI & DAVENPORT, LLP
        3400 Bank of America Plaza
        901 Main Street
        Dallas, Texas 75202
        (214) 939-2000
        (214) 939-2090 (Fax)
        keith.verges@figdav.com
        (*Motion for Admission pro
        hac vice forthcoming*)

        ATTORNEYS FOR PLAINTIFF
        VIRGINIA PENNINGTON, individually
        and on behalf of all others similarly situated